UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SANCHAZ DEMOND HAROLD                    CIVIL ACTION

VERSUS                                   NO. 17-7811

RAYBURN CORRECTIONAL                     SECTION "R" (2)
CENTER ET AL.

## REPORT AND RECOMMENDATION

Plaintiff, Sanchaz Demond Harold, was an inmate incarcerated in the Rayburn

Correctional Center ("Rayburn") in Angie, Louisiana at the time he filed this complaint

pro se and in forma pauperis pursuant to 42 U.S.C. § 1983.  He alleges that defendants

Rayburn, Dr. Robert Cleveland and Warden Beverly Kelly provided him with

inadequate medical care while he was incarcerated.  Plaintiff seeks monetary damages

in the total amount of $800,000 and a complete health evaluation, including blood work.

Record Doc. No. 1 (Complaint at ¶ V).

On October 17, 2017, I conducted a telephone conference in this matter.

Participating were plaintiff pro se and Assistant Louisiana Attorney General Michael

Keller, counsel for defendants.  Plaintiff was sworn and testified for all purposes

permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.  After

1

the conference, I denied plaintiff's motion for an emergency physical examination order, Record Doc. No. 22, because plaintiff's testimony during the telephone conference, together with the medical records, failed to establish good cause for a medical examination. Record Doc. No. 24. Plaintiff was sent a copy of all medical records received by the court, but he did not provide the court with any written comments concerning them by the November 30, 2017 deadline established in the court's order. Record Doc. No. 28.

Having considered the record as a whole and the applicable law, I recommend that this case be DISMISSED WITH PREJUDICE for the following reasons.

## THE RECORD

Plaintiff testified that he was incarcerated in Rayburn in 2012 for a simple burglary conviction and a parole violation. He stated that he would be released on November 1, 2017. Harold confirmed that his medical care claims in this case arise from symptoms, including vision issues, dizziness, weight loss and HIV exposure, that he began to experience while he was incarcerated in Rayburn. Harold testified that he received the care necessary to address his vision/eye-related issues and that his medical care complaint does not include those conditions. Instead, he complained of inadequate medical care concerning his symptoms of dizziness, loss of energy, decreased muscle

and body mass, tingling muscles and body aches. Harold testified conclusorily that "something is wrong," and that he had gotten "really small."

Plaintiff traced the onset of his alleged symptoms to an altercation in 2015 with another inmate, Donald Vicks, whom he suggested may have been HIV positive. Harold stated that he contacted the Rayburn medical department in October 2015, after his fight with Vicks, because he was experiencing symptoms he had never experienced before. Harold stated that he was told he would have to attend a sick call and request an HIV test. He confirmed that his blood was drawn several times at Rayburn, but testified that there were no lab results in his medical records. Harold confirmed, however, that he received and reviewed a copy of his medical records from the court— including letters from nurses concerning his blood work— and that he was informed that the results of his HIV tests were negative.

Harold confirmed that he has seen a copy of the HIV opt-out test performed on October 25, 2016, and that the results were negative. He stated that a member of the medical department at Rayburn told him that "HIV doesn't live outside the body for long," and that the nurse who took his blood struggled to put it in a vial for about 10 to 15 minutes. When asked whether he thought there was an issue with the way the test was done, he responded that it was not done accurately. Harold testified that after the

nurse took his blood, she set it down on the table, "messed" with the testing machine, opened the vial after fiddling with it for 10 to 15 minutes, asked him to wait in the lobby and then told him the test was negative.

Plaintiff confirmed that he saw the January 5, 2017 response from Nurse Tullos in his medical records, which states that his November 2016 test results were negative. He explained that his blood was drawn in November but that he never received the results, which is why he wrote Nurse Tullos asking about his HIV status. In response to the question "what is your complaint about [Nurse Tullos' response]," Harold testified, "I have no documentation that there was lab work ever done on the blood."

Harold confirmed that he also has a copy of the letter dated February 8, 2017, from Nurse Knight, which indicates that his HIV lab results were negative. When asked to elaborate upon his complaint, plaintiff responded "something is wrong, your honor. Something is really wrong with me." He then stated he was tested for infectious disease but that the medical staff did not know what he could have. He stated,"well if it's not infectious disease, what else could it be? I showed them pictures of me and how my physical [appearance] has changed. Even security officers here are telling me to seek medical attention because I'm getting small, and stuff like that. It's not just them noticing it, I feel this in my body."

Harold stated that "everything is accurate in the medical records," but he reasserted that he does not have copies of any lab results. Asked how many times he had been seen by doctors or nurses at Rayburn for this issue, plaintiff answered "three to four times." He later specified that he had only seen a doctor twice. Harold asserted that throughout the five years he has been incarcerated in Rayburn, this is the first serious complaint he has made to the medical department.

Harold testified that he is not simply complaining about a general sense of "not feeling good," but that his arms, neck and face have gotten "severely small." Harold stated that he is "drying up," and he is "trying to figure out what's wrong" because you can "see the bones and stuff in my arms and my shoulders. I wasn't this small." He confirmed that during a February 2017 visit to University Medical Center ("UMC") for eye-related issues, he weighed 148 pounds, and during a sick call visit later that same month he weighed in at 147 pounds. Harold was back up to 148 pounds when he returned to UMC in May 2017. He testified that when he saw a doctor the day before this Spears hearing he weighed in at 144 pounds. Plaintiff maintained, nevertheless, that he had lost weight.

Harold testified that his most recent doctor's visit was with Dr. Cleveland on October 16, 2017. Plaintiff testified that Dr. Cleveland talked with him about the lab

results from September 20, 2017, when his blood was tested for infectious disease. Harold stated that Dr. Cleveland informed him that his lab results were negative. "I'm not saying that I have HIV," Harold asserted, "but something is wrong because I'm aching and hurting." Plaintiff testified that Dr. Cleveland assured him that he would schedule more lab work.

The verified medical records from Rayburn state that plaintiff filed a health care request form for HIV testing on September 26, 2016, after his altercation with Donald Vicks. Record Doc. No. 10-1 at p. 25. The September 26 form is the first medical record notation of any complaint of exposure to HIV. The nurse who saw Harold that day noted that he requested HIV testing and claimed that he received multiple scratches after an altercation with another offender. Id. at p. 25. The nurse referred the chart to a doctor. Id. In response to Harold's letter questioning when his HIV testing request would be processed, Harold was informed on October 23, 2016 that he had a pending appointment with a doctor and that the doctor was the only person who could order medical tests. Id. at p. 5. He was also advised that "[his] risk for contracting HIV is small unless [there] has been an exchange of bodily fluids. HIV does not live long outside the body so it is unlikely to contract the virus simply by sharing the same space as someone with it." Id. Nurse Wheat signed an HIV opt-out testing form on October

6

25, 2016, indicating that Harold's HIV test results from that day were negative.  Id. at

p. 12.

Plaintiff saw Dr. Cleveland on November 16, 2016, and he requested HIV testing.

Id. at p. 21.  Dr. Cleveland ordered HIV and RPR[1] testing and a hepatitis panel.  Id.

Harold wrote a letter to Nurse Knight on January 3, 2018, concerning the testing ordered

by Dr. Cleveland.  Nurse Tullos responded to Harold's letter on January 5, 2018,

informing him that all of his lab work was normal and that his weight ranged from 144

pounds on December 1, 2014 to 153 pounds on December 30, 2016.  Id. at p. 27.  Nurse

Knight informed Harold via letter on February 8, 2017, that the results from his third

HIV test on January 18, 2017 were normal.  Id. at p. 14.

Plaintiff attended routine sick call on February 22, 2017 and complained of

dizziness, weakness, blurry vision, a change in his physique–face, wrists and other

areas–and that he had lost a lot of weight.  Id. at p. 28.  The nurse scheduled a doctor's

appointment and noted that plaintiff's charts showed a weight fluctuation of one to two

pounds since June 2016.  Id.  Harold complained of weight loss and requested that

additional tests be done during his doctor's call visit on April 6, 2017.  Id. at p. 18.  The

doctor noted that Harold had actually gained weight and was up to 151 pounds.  Id.

---

[1]    RPR is the rapid plasma reagin test used to screen for syphilis.
https://www.medicinenet.com/.

On May 12, 2017, Nurse Wheat received Harold's letter complaining of weight loss, dizziness, weakness, loss of balance and burning muscles. <u>Id.</u> at p. 19. Plaintiff requested in the same letter that he be tested for Donald Vicks' illness. <u>Id.</u> Nurse Wheat responded on May 17, 2017, stating that Harold would receive routine infectious disease testing. <u>Id.</u> at p. 6. She also reminded plaintiff that if his symptoms persisted he needed to make a routine sick call to be evaluated by Dr. Cleveland. <u>Id.</u>

Harold filled out a health care request form on August 16, 2017, in which he complained of severe pain around his ankles, wrists, neck and pain below chest and in his sides when breathing. <u>Id.</u> at p. 23. He also wrote that he was experiencing dizziness, loss of energy, unsteady balance at times and daily headaches. <u>Id.</u> Harold was given analgesic pain balm and Mylanta, and he was told to make a routine sick call if there was no improvement in his chest pain. <u>Id.</u> Plaintiff filed another health care request form on August 31, 2017, asserting the same complaints on his August 16 form. Record Doc. No. 26-1 at pp. 11-12. He was prescribed ibuprofen and acetaminophen after his August 31 sick call visit. <u>Id.</u>

Harold's verified supplemental records include normal lab results for a hepatitis panel, an HIV screen and an RPR ordered by Dr. Cleveland on September 20, 2017. Plaintiff opted out of HIV testing on October 13, 2017. <u>Id.</u> at pp. 3 and 5.

Dr. Cleveland saw plaintiff a second time on October 16, 2017, and the doctor noted that plaintiff complained of pain in his wrists, ankles and neck, dizziness and unsteady balance.  Id. at p. 9.  Plaintiff weighed 144 pounds at the time of his visit with Dr. Cleveland, and he was prescribed 800 mg of Motrin for his pain.  Id.

## ANALYSIS

### I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusory allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims.  <u>Spears</u>, 766 F.2d at 180.  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  <u>Davis</u>, 157 F.3d at 1005.  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  <u>Wilson v. Barrientos</u>, 926 F.2d 480, 481 (5th Cir. 1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing."  <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of

deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's Section 1983 complaint should be dismissed in its entirety under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1) as legally frivolous because it lacks an arguable basis in law. Plaintiff's complaint fails to state a cognizable claim of violation of his constitutional rights, even under the broadest reading.[2]

## II.    MEDICAL CARE

Harold was a convicted inmate at Rayburn at all relevant times about which he complains. He alleges that defendants denied him adequate treatment for his complaints of dizziness, weakness and weight loss. Record Doc. No. 1. In his statement of facts, plaintiff admits that he was seen by Dr. Cleveland on April 6, 2017 for his complaint of weight loss, but he alleges that his other complaints of weakness and dizziness were overlooked. Record Doc. No. 10 at p. 4. Plaintiff seems to allege that more blood work should have been done to determine if he was exposed to HIV after his physical altercation with another inmate, Donald Vicks. Id. at p. 7. In his testimony, plaintiff asserted that the three blood tests he received at Rayburn must have been inaccurate because "something is wrong" and that his complaints of dizziness, severe loss of energy, weight loss and HIV exposure were not properly addressed despite three or four

---

1The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

medical consultations specifically related to those symptoms. Plaintiff's complaint, as amended by his statement of facts and his Spears hearing testimony, fails to state a claim for deliberate indifference to his serious medical needs.

> In Hare v. City of Corinth, the Fifth Circuit held:
>
> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d 633, 650 (5th Cir. 1996). In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The

13

Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."  Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur Cty., 245 F.3d 447, 458-59 (5th Cir. 2001)).  In the Section 1983 medical care context, a

14

showing of deliberate indifference to serious medical needs "requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009) (quoting Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has reaffirmed that "deliberate indifference"
>
> is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue.  See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'").  Therefore, the

"deliberate indifference" standard applies, and Harold must allege facts sufficient to establish that defendants Rayburn, Dr. Cleveland and Warden Kelly knew that he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

As the Rayburn medical records establish, plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth Cnty. v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); see also Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (plaintiff, who was 18 months post-surgical implantation of hip prosthesis, complained of pain in his hip and was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip"); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) ("swollen wrists with some bleeding" not a serious medical need); Claudet v. Jones, No. 10-87,

16

2010 WL 4365512, at *4 (E.D. La. Oct. 27, 2010) (back, neck, shoulder and chest pain and high blood pressure not serious medical needs).

Harold claims that he came in contact with an HIV-positive inmate's blood, but his testimony is clear that he did not do so in a way that could conceivably transmit the virus.  See Stedmans Medical Dictionary, available on Westlaw at STEDMANS 18530 (("HIV is transmitted from person to person in cell-rich body fluids (notably blood and semen) through sexual contact, sharing of contaminated needles (as by IV drug abusers), or other contact with infected blood (as in accidental needle sticks among health care workers).").  Nothing in plaintiff's testimony or his medical records establishes either that he was in fact exposed to HIV or that he is himself HIV positive.  "[P]laintiff's stress, worry and fear of contracting HIV as a result of his very brief contact with an allegedly HIV-positive inmate and his request to be tested for HIV do not state serious medical needs for purposes of constitutional analysis."  Fair v. Crochet, No. 09-4196, 2010 WL 430806, at * 8 (E.D. La. Feb. 4, 2010).

Even assuming, without concluding, that Harold's dizziness, energy loss, weight loss and speculative exposure to HIV presented a serious medical need for constitutional purposes, plaintiff has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials.  His complaint, as amended by his testimony and his statement of facts and confirmed by the

17

medical records, shows that he received constitutionally adequate medical care while incarcerated in Rayburn.

Harold testified and his medical records confirm that he was seen by doctors and nurses and that his conditions were treated with physical examinations, objective testing and medication, including ibuprofen and acetaminophen.  His testimony and medical records confirm that his conditions were monitored and addressed by medical personnel during his stay in Rayburn, and that those professionals exercised appropriate medical judgment regarding his need, or lack of need, for treatment.  In short, despite this consistent monitoring of plaintiff's complaints, no objective medical findings established that Harold had any medical condition requiring treatment.

Plaintiff alleges that he received <u>no</u> treatment for his complaints of dizziness, weakness and overall physical decline, but his medical records <u>and</u> his testimony reflect that he was seen by several nurses and by Dr. Cleveland twice and tested for HIV three times. These multiple medical consultations, tests and medication prescriptions are <u>not</u> "no treatment" and do not support a claim of deliberate indifference.  <u>See</u> <u>Harris v. Epps</u>, 523 F. App'x 275, 275 (5th Cir. 2013) (citing <u>Domino</u>, 239 F.3d at 756; <u>Banuelos</u>, 41 F.3d at 235) (When inmate received tests and regular examinations for hepatitis C and a back problem, "his claim amounts to a disagreement with the treatment and a desire for more.  That is not enough for a viable claim of deliberate indifference."); <u>Lathers v.</u>

Nelson Coleman Corr. Ctr., No. 10-128-D1, 2010 WL 1489903, at *10 (E.D. La. Mar. 22, 2010), report & recommendation adopted, 2010 WL 1485468 (E.D. La. Apr. 13, 2010) (Inmate "was not denied treatment; on the contrary, x-rays were taken and no injury was found. . . . [The C]onstitution does not require that a prisoner be sent to a hospital for additional care or treatment when medical tests indicate that no such additional treatment is necessary.").

Although Harold has expressed dissatisfaction with the overall speed, quality and effectiveness of treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added). No such showing has been made on the current record. In Harold's case, the decisions of Dr. Cleveland and the jail nurses not to provide him with additional testing or treatment for alleged conditions that they found were medically unsupported were

classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson, 910 F.2d at 284. Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. No such showing can be made in this case in light of the continuing medical attention Harold received for his complaints of weakness, dizziness, body aches, weight loss and potential exposure to HIV during his incarceration at Rayburn.

Contentions like Harold's that amount to mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Estelle, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not

represent cruel and unusual punishment.  At most it is medical malpractice . . . .")
(emphasis added); Concepcion v. Pickles, 450 F. App'x 72, 74 (2d Cir. 2011) (failure
to provide medication for more than one year to prisoner with HIV was not deliberate
indifference when his blood count was consistently monitored and treatment began
promptly when his blood count fell below a certain level); Rowe v. Norris, 198 F. App'x
579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with
physician's choice of medication); Mendoza, 989 F.2d at 193 (prisoner's disagreement
with the type or timing of medical services provided cannot support a Section 1983
claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment
are inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim
that defendants were deliberately indifferent to his serious medical needs.  His
complaints in this case about his medical care advance a legally frivolous argument and
fail to state a claim for relief under Section 1983.

## **RECOMMENDATION**

For all the forgoing reasons, it is **RECOMMENDED** that plaintiff's complaint
be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a
claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[3]

New Orleans, Louisiana, this _____5th_____ day of January, 2018.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

_____

[3]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.